**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

RAMONA H. WILSON and JOHN C.     :
WILSON,

                                 :

       Plaintiffs,

                                 :

vs.                                     CA 11-0020-KD-C

                                 :

CHESTER BROSS CONSTRUCTION
COMPANY, et al.,                    :

       Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), plaintiffs' motion to remand (Doc. 8), the brief in response filed by defendant Chester Bross Construction Company (Doc. 11), the response of defendant Mark Twain Redi-Mix (Doc. 12),[1] and plaintiff's reply (Doc. 17). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** plaintiff's motion to remand (Doc. 8).

## FINDINGS OF FACT

1.     On June 7, 2009, a Ford F-250 truck being driven by Larry G. Borden collided into the rear of a Ford Expedition driven by plaintiff Ramona H. Wilson causing Wilson's car to collide with the rear of a camper-trailer being pulled by her husband's Ford F-150 truck. (Doc. 1,

---

[1]     Hereinafter, Chester Bross Construction Company will be referred to as "Chester Bross" and defendant Mark Twain Redi-Mix will be referred to as "Mark Twain."

Exhibit A, COMPLAINT, at ¶¶ 9-11.) As a result of this collision, plaintiffs suffered "serious injury[.]" (*Id*. at ¶ 12.)

2.　　　Plaintiffs filed suit in the Circuit Court of Mobile County, Alabama on June 9, 2010, against Chester Bross, Mark Twain, Larry G. Boden, ALFA Mutual Insurance Company,[2] and numerous fictitious parties, for the injuries and damages they have suffered or will suffer as a result of the above-described collision.

**FIRST CAUSE OF ACTION**
**(Negligence)**

The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON allege claims against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, as follows:

14.　　　The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON reallege and incorporate by reference all of the allegations contained in the GENERAL ALLEGATIONS as if set forth fully herein.

15.　　　The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that they were directly caused to be injured as a result of the negligence of the Defendants described herein in one or more of the following respects:

A.　　　Negligently colliding into the Ford Expedition driven by Plaintiff RAMONA H. WILSON at the times and place made the basis of this action.

B.　　　Negligently operating the subject Ford F-250 in violation of the laws of the State of Alabama.

C.　　　Negligently failing to maintain a proper lookout and/or maintain adequate stopping distance.

D.　　　Negligently failing to inspect, maintain, repair, and/or service the subject Ford F-250.

---

[2]　　　"ALFA MUTUAL INSURANCE COMPANY is a business entity incorporated in the State of Alabama[.]" (*Id*. at ¶ 5.)

E.	Negligently failing to adequately train, supervise and/or monitor its employees in safely operating a commercial vehicle, automobile and/or truck.

16.	Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that as a proximate result of the above-described negligence, the Plaintiffs suffered damage including but not limited to the following:

Plaintiff **RAMONA H. WILSON** severely injured her neck and back; she was made sick, sore and lame; she has been caused to undergo medical treatment and procedures for her injuries and will be caused to undergo further such treatment and procedures in the future; she was permanently injured; she was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; she was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of her injuries and she will be caused to incur such expenses in the future; her motor vehicle was bent, smashed, broken and otherwise damaged; she lost the use of said vehicle; and she was caused to lose wages and income.

Plaintiff **JOHN C. WILSON** sustained lacerations; he was made sick, sore and lame; he has been caused to undergo medical treatment and procedures for his injuries; he was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; he was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of his injuries and he will be caused to incur such expenses in the future; his motor vehicle and camper-trailer were bent, smashed, broken and otherwise damaged; he lost the use of said vehicle and said camper-trailer; and he was caused to lose wages and income.

WHEREFORE, the Plaintiffs RAMONA H. WILSON and JOHN C. WILSON demand judgment against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law.

## SECOND CAUSE OF ACTION
### (Wantonness)

The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON allege claims against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, as follows:

17.     The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON reallege and incorporate by reference all of the allegations contained in the GENERAL ALLEGATIONS as if set forth fully herein.

18.     The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that they were directly caused to be injured as a result of the wantonness of the Defendants described herein in one or more of the following respects:

A.     Wantonly colliding into the Ford Expedition driven by Plaintiff RAMONA H. WILSON at the times and place made the basis of this action.

B.     Wantonly operating the subject Ford F-250 in violation of the laws of the State of Alabama.

C.     Wantonly failing to maintain a proper lookout and/or maintain adequate stopping distance.

D.     Wantonly failing to inspect, maintain, repair, and/or service the subject Ford F-250.

E.     Wantonly failing to adequately train, supervise and/or monitor its employees in safely operating a commercial vehicle, automobile and/or truck.

19.     Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that as a proximate result of the above-described wantonness, the Plaintiffs suffered damage including but not limited to the following:

Plaintiff **RAMONA H. WILSON** severely injured her neck and back; she was made sick, sore and lame; she has been caused to undergo medical treatment and procedures for her injuries and will be caused to undergo further such treatment and procedures in the future; she was permanently injured; she was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; she was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of her injuries and she will be caused to incur such expenses in the future; her motor vehicle was bent, smashed, broken and otherwise damaged; she lost the use of said vehicle; and she was caused to lose wages and income.

Plaintiff **JOHN C. WILSON** sustained lacerations; he was made sick, sore and lame; he has been caused to undergo medical treatment and procedures for his injuries; he was caused to suffer physical pain and

4

mental anguish, still so suffers and will so suffer in the future; he was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of his injuries and he will be caused to incur such expenses in the future; his motor vehicle and camper-trailer were bent, smashed, broken and otherwise damaged; he lost the use of said vehicle and said camper-trailer; and he was caused to lose wages and income.

WHEREFORE, the Plaintiffs RAMONA H. WILSON and JOHN C. WILSON demand judgment against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law, including punitive damages.

## THIRD CAUSE OF ACTION
### (Negligent and/or Wanton Hiring, Retention, and/or Supervision)

The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON allege claims against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; LARRY G. BODEN; and fictitious defendants 1-100, individually and jointly, as follows:

20.     The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON reallege and incorporate by reference all of the allegations contained in the GENERAL ALLEGATIONS and PARAGRAPHS 1-19 as if set forth fully herein.

21.     The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that they were directly caused to be injured as a result of the negligence and/or wantonness of the Defendants described herein in one or more of the following respects:

A.     Negligently and/or wantonly hiring Larry G. Boden.

B.     Negligently and/or wantonly retaining Larry G. Boden.

C.     Negligently and/or wantonly supervising Larry G. Boden.

22.     Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that as a proximate result of the above-described negligence

and/or wantonness, the Plaintiffs suffered damage including but not limited to the following:

Plaintiff **RAMONA H. WILSON** severely injured her neck and back; she was made sick, sore and lame; she has been caused to undergo medical treatment and procedures for her injuries and will be caused to undergo further such treatment and procedures in the future; she was permanently injured; she was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; she was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of her injuries and she will be caused to incur such expenses in the future; her motor vehicle was bent, smashed, broken and otherwise damaged; she lost the use of said vehicle; and she was caused to lose wages and income.

Plaintiff **JOHN C. WILSON** sustained lacerations; he was made sick, sore and lame; he has been caused to undergo medical treatment and procedures for his injuries; he was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; he was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of his injuries and he will be caused to incur such expenses in the future; his motor vehicle and camper-trailer were bent, smashed, broken and otherwise damaged; he lost the use of said vehicle and said camper-trailer; and he was caused to lose wages and income.

WHEREFORE, the Plaintiffs RAMONA H. WILSON and JOHN C. WILSON demand judgment against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law.

## FOURTH CAUSE OF ACTION
### (Negligent and/or Wanton Entrustment)

The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON allege claims against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, as follows:

23.     The  Plaintiffs RAMONA H. WILSON and JOHN C. WILSON reallege and incorporate by reference all of the allegations contained in the GENERAL ALLEGATIONS and PARAGRAPHS 1-19 as if set forth fully herein.

24.     The  Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that they were directly caused to be injured as a result of the negligent and/or wanton entrustment of the Ford F-250 involved in the collision made the basis of this action to LARRY G. BODEN.

25.     Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that as a proximate result of the above-described negligence and/or wantonness, the Plaintiffs suffered damage including but not limited to the following:

Plaintiff **RAMONA H. WILSON** severely injured her neck and back; she was made sick, sore and lame; she has been caused to undergo medical treatment and procedures for her injuries and will be caused to undergo further such treatment and procedures in the future; she was permanently injured; she was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; she was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of her injuries and she will be caused to incur such expenses in the future; her motor vehicle was bent, smashed, broken and otherwise damaged; she lost the use of said vehicle; and she was caused to lose wages and income.

Plaintiff **JOHN C. WILSON** sustained lacerations; he was made sick, sore and lame; he has been caused to undergo medical treatment and procedures for his injuries; he was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; he was caused to incur doctors' bills, hospital bills and other medical expenses in and about the care and treatment of his injuries and he will be caused to incur such expenses in the future; his motor vehicle and camper-trailer were bent, smashed, broken and otherwise damaged; he lost the use of said vehicle and said camper-trailer; and he was caused to lose wages and income.

WHEREFORE, the Plaintiffs RAMONA H. WILSON and JOHN C. WILSON demand judgment against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law.

### FIFTH CAUSE OF ACTION
### (Loss of Consortium)

The Plaintiff JOHN C. WILSON alleges claims against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK

TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, as follows:

26.     The Plaintiff JOHN C. WILSON realleges and incorporates by reference all of the allegations contained in the GENERAL ALLEGATIONS.

27.     The Plaintiff JOHN C. WILSON further alleges that he was the [husband] of Ramona H. Wilson at the time of the events made the basis of this suit and remains so today.

28.     As a proximate consequence of the negligence and/or wantonness by these Defendants, Plaintiff JOHN C. WILSON was caused to suffer the following injuries and damages: he was caused to lose the consortium and services, love and companionship of his wife for some period of time in the past and will be caused to lose the same services for some period of time in the future; and he has rendered valuable nursing services to his wife during her period of convalescence, for which he should be compensated.

WHEREFORE, Plaintiff JOHN C. WILSON demands judgment against the Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law.

## SIXTH CAUSE OF ACTION
### (UM/UIM COVERAGE)

The Plaintiffs RAMONA H. WILSON and JOHN C. WILSON allege claims against the Defendant ALFA MUTUAL INSURANCE COMPANY and fictitious defendants 1-100, individually and jointly, as follows:

29.     The  Plaintiffs RAMONA H. WILSON and JOHN C. WILSON reallege and incorporate by reference all of the allegations contained in the GENERAL ALLEGATIONS and PARAGRAPHS 1-22 as if set forth fully herein.

30.     The  Plaintiffs RAMONA H. WILSON and JOHN C. WILSON further allege that at the times and places made the basis of this Complaint, they were insureds under the terms and provisions of a policy and/or policies of insurance issued by Defendant ALFA MUTUAL INSURANCE COMPANY.

31.     At the times and places made the basis of this Complaint, said policy and/or policies of insurance covering Plaintiffs were in full force and effect. As such, under the terms and provisions of said policy and/or policies of insurance, the Defendant ALFA MUTUAL INSURANCE COMPANY agreed to and is obligated to pay all sums which the Plaintiffs would be legally entitled to recover as damages from the owner or operator of any uninsured and/or under-insured motor vehicle.

32.     At the times and places made the basis of this Complaint, Defendants CHESTER BROSS CONSTRUCTION COMPANY; MARK TWAIN REDI-MIX, INC.; and fictitious defendants 1-100, individually and jointly, were uninsured and/or under-insured motorists within the terms and provisions of the policy of insurance issued to the Plaintiffs.

33.     The Plaintiffs RAMONA H. WILSON  and JOHN C. WILSON further allege that as of June 2009 they have made demand upon and/or provided notice to the Defendant ALFA MUTUAL INSURANCE COMPANY to pay the uninsured and/or under-insured motorist benefits to which they are entitled under the terms and provisions of said policy and/or policies of insurance.

WHEREFORE,  the Plaintiffs RAMONA H. WILSON and JOHN C. WILSON demand judgment against the Defendant ALFA MUTUAL INSURANCE COMPANY and fictitious defendants 1-100, individually and jointly, for such sums as the jury may assess and are recoverable by law.

(*Id*. at ¶¶ 14-33.)

3.     Chester Boss, Mark Twain, and ALFA were served with the complaint on or about June 14, 2010 (*see* Doc. 1, Exhibit A, Notices of Service) and each of these defendants answer the complaint on either July 13 or 14, 2010 (*see id*., ANSWERS). In answer to the complaint, Chester Bross denied any causal relationship between it "and injuries and damages of Plaintiffs" (Doc. 1, Exhibit A, Answer and Defenses of Chester Bross Construction Company, at 5) and Mark Twain denied that Larry G. Boden was acting within the course or scope of his employment with it "at all times relevant to the issues raised" in the complaint (Doc. 1, Exhibit A, Affirmative Defenses and Answer to Complaint, at 1).

4.      On or about August 23, 2010, plaintiff Ramona Wilson responded to Chester

Bross' first interrogatories and requests for production. (Doc. 11, Exhibit K.) Therein, plaintiff

stated that she missed work for five weeks after the accident from June 8-July 13, 2009 when her

pay rate was $343.27 per week and that she missed work for four weeks after her surgery[3] from

December 30, 2009 through January 27, 2010 at which time her pay rate was $384.62 per week.

(*See id.* at 3.)

5.      On or about September 8, 2010, in answer to the plaintiffs' first set of

interrogatories and requests for production, defendant Chester Bross disclosed that it was

covered by an insurance policy issued by Travelers Insurance Company, Policy No. VTC2J-

CAP-7163B974-TIL08, the limits of same being $1,000,000 per accident. (*See* Doc. 11, Exhibits

B-D.)  In addition, on or about October 7, 2010, in answer to the plaintiffs' first set of

interrogatories and requests for production, defendant Mark Twain disclosed that it was covered

by an insurance policy issued by American Family Mutual Insurance Company, the limits of

same for bodily injury and property damage being $1,000,000 each per accident. (*See id.*,

Exhibits E & F.)

6.      On November 22, 2010, the Custodian of Records for Blue Cross and Blue Shield

of Alabama certified that Blue Cross & Blue Shield of Alabama was asserting a subrogation

claim in the amount of $17,480.30 in this case. (Doc. 11, Exhibit J.)

7.      On December 15, 2010, defendant Alfa filed a motion to opt out of the

proceedings in this case. (Doc. 1, Exhibit B.) This motion was granted by the trial court on

January 3, 2011. (Doc. 1, Exhibit C.)

---

[3]      The surgery performed was a lumbar laminectomy. (*See* Doc. 12, Exhibit A, at 4.)

8.     Defendant Chester Bross filed its notice of removal on January 11, 2011, and

therein made the following argument regarding the amount in controversy[4]:

> Paragraph thirty-two (32) of the Plaintiffs' Complaint alleges that Defendants Chester Bross Construction Company, Mark Twin Redi-Mix, Inc., and fictitious 1-100 were "uninsured and/or under-insured motorists." The insurance available to Defendant Chester Bross Construction Company is $1,000,000.00. In addition, the insurance available to Defendant Mark Twain Redi-Mix, Inc., is $1,000,000.00. Since the Plaintiff has alleged that defendants Chester Bross and Mark Twain Redi-Mix, Inc., are under-insured, and considering each defendant has $1,000,000.00 in liability coverage, it is inarguable that the amount in controversy herein is less than $75,000.00. Through the allegations of the Plaintiffs' Complaint, they have affirmatively admitted the amount in controversy is in excess of $2,000,000.00; therefore, the amount in controversy exceeds $75,000.00.

> In *Toole, supra*, Judge Thompson looked at the plaintiff's complaint, which alleged that the defendants were underinsured although their policy limits were $100,000. Further, the plaintiff alleged substantial bodily harm, future surgery for the harm, and lifelong pain and suffering. Here, Plaintiffs allege that Ramona Wilson:

>> Severely injured her neck and back; she was made sick, sore and lame; she has been caused to undergo medical treatment and procedures for her injuries and she will be caused to undergo further treatment and procedures in the future; she was permanently injured; she was caused to suffer physical pain and mental anguish, still so suffers and will so suffer in the future; she was caused to incur doctor's bills, hospital bills and other medical expenses in and about

---

[4]     This is the only relevant issue, plaintiffs agreeing that complete diversity now exists (*see* Doc. 8, Plaintiffs' Brief in Support of Motion to Remand, at 2 ("While Plaintiffs do not dispute that the citizenship of the parties has become diverse, Bross has not satisfied its burden of proving that the amount in controversy exceeds $75,000.")) and they make no argument that removal was untimely (*see* Doc. 8). *Compare North American Sports, Inc.,* 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.") *with Sherman v. Sigma Alpha Mu Fraternity*, 128 F.Supp.2d 842, 844 (D. Maryland 2001) (objections based upon a procedural defect are waived if not raised in a properly-filed motion to remand within the 30-day deadline set forth in § 1447(c)) and 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

the care and treatment of her injuries and she will be caused
to incur such expenses in the future; her motor vehicle
[Ford Expedition] was bent, smashed, broken and
otherwise damaged, she lost the use of said vehicle; and she
was caused to lose wages and income.

In addition, Plaintiffs allege that John Wilson:

Sustained lacerations; he was made sick, sore and lame; he
has been caused to undergo medical treatment and
procedures for his injuries; he was caused to suffer physical
pain and mental anguish, still so suffers and will so suffer
in the future; he was caused to incur doctor's bills, hospital
bills and other medical expenses in and about the care and
treatment of his injuries and he will be caused to incur such
expenses in the future; his motor vehicle [Ford F-150] and
camper-trailer were bent, smashed, broken and otherwise
damaged; he lost the use of said vehicle and said camper-
trailer; and he was caused to lose wages and income.

Moreover, Plaintiffs allege that the insurance available to them from the
underlying defendants is insufficient to cover their claims. The insurance
coverage available to each defendant is $1,000,000.00. Thus, although the
underlying defendants in this matter have a total of $2,000,000.00 in
insurance coverage available to satisfy any judgment entered against them,
Plaintiffs['] Complaint sets forth allegations that the underlying
defendants are underinsured. Following the court's rationale in *Toole*,
there is a preponderance of evidence that the amount in controversy in this
matter more likely than not exceeds $75,000.

.        .        .

Plaintiffs have named their insurer, ALFA, as a defendant in this
matter on the grounds that [] insurance available to the underlying
defendants is insufficient to cover their damages. ALFA has conditionally
opted-out of this litigation. Now that ALFA has opted-out, it has become a
nominal party whose citizenship may be disregarded for purposes of
diversity jurisdiction analysis. Once the Court disregards the citizenship of
ALFA, it is clear that none of the remaining defendants are citizens of the
forum state. Given the allegations in the Plaintiffs' Complaint, the amount
in controversy exceeds the $75,000.00 jurisdictional minimum. Complete
diversity exists between the Plaintiffs and properly joined defendants and
the amount in controversy affirmatively plead to be in excess of
$2,000,000.00.

(Doc. 1, at 7-8 & 8-9 (internal citations omitted.))

9.     Plaintiffs filed their motion to remand on January 25, 2011. (Doc. 8.) Therein, plaintiffs contend that the removing defendants have not unambiguously established that the amount in controversy is greater than $75,000, as required by *Lowery v. Alabama*, 483 F.3d 1184 (11th Cir. 2007).  (*See* Doc. 8.)   Plaintiffs contend that they inserted a generally-pled claim for uninsured/underinsured coverage in their complaint because at the time of filing same they did not know whether defendants had insurance policies effective on the date of the crash which would provide coverage to the driver to only now have the removing defendants take the position that anytime such a UM/UIM claim is made and it is proven that liability insurance beyond $75,000 exists, "then the amount in controversy requirement [is] necessarily satisfied *ab initio*." (Doc. 8, Brief, at 6; *see also id*. at 4-9.)

10.     Chester Bross filed its response to plaintiffs' motion to remand on February 10, 2011 (Doc. 11) as did Mark Twain (Doc. 12). The position of Chester Bross is summed up very succinctly in the last paragraph of its response prior to the conclusion, as follows:

> Here, Plaintiffs have alleged severe and permanent injury. Plaintiff Ramona Wilson has quantifiable damages from the date of the accident until removal of this action of $51,797.75. Plaintiffs seek additional damages in the form of future medical expenses, pain, suffering and mental anguish. Plaintiffs also seek punitive damages. Plaintiffs have maintained their claims for underinsured motorist benefits despite knowing the defendants are each insured up to $1,000,000. Moreover, Plaintiffs have refused to stipulate that the amount in controversy does not exceed the jurisdictional minimum. Defendant submits that each of the above is sufficient to meet its burden of establishing the jurisdictional amount. Furthermore, when considered together, it is more likely than not that the amount in controversy exceeds $75,000 in the present litigation.

(Doc. 11, at 7.)  For its part, Mark Twain makes the following arguments: (1) plaintiffs received notice of at least $2,000,000.00 in coverage prior to filing a UM/UIM claim thereby establishing

that they seek to recover in excess of $75,000 (Doc. 12, at 4-5);[5] (2) the position of the defendants is not illogical both because plaintiffs had knowledge of the $2,000,000 in coverage prior to filing suit and also because the plaintiffs refuse to stipulate that the amount in controversy is less than $75,000 (*id*. at 5); (3) defendants' arguments are not speculative inasmuch as plaintiffs had pre-suit knowledge "of at least $1,000,000.00 in coverage[,]" yet still filed suit alleging insufficient coverage (*id*. at 5-6);[6] and (4) plaintiffs fail to properly assert property damage claims against the defendants but when one combines the average retail of the 2006 Jayco ($20,440.00) and the 2002 Expedition ($8,025.00) with the "$55,000.00 in medical expenses[,]" the $75,000 threshold is easily met (*id*. at 7-8).

11. The plaintiffs' reply, filed February 18, 2011 (Doc. 17) reads, in relevant part, as follows:

> [I]t is just as readily deducible from the Defendants' assertions that none of the potential liability insurance coverage actually applies to Plaintiffs' claims. As Mark Twain asserts in its Response, the at-fault driver "was not in the course and scope of his employment at the time of the accident . . . [and] was not working that Sunday afternoon." This issue alone provides an arguable basis for including a UM/UIM claim in Plaintiffs' Complaint and demonstrates the critical flaw in the Defendant's argument relative to the amount in controversy. . . . Even as of today, for all the Plaintiffs know, the insurance carriers could be defending under reservations of rights.
>
> In any event, to extrapolate the amount in controversy from Plaintiffs' inclusion of a UM/UIM claim requires both assumption and speculation – neither of which are consistent with *Lowery*'s requirement that "removal unambiguously establish federal jurisdiction."

---

[5] This defendant also points to the fact that plaintiffs did not dismiss their UM/UIM claim even after the defendants produced their insurance policies during formal discovery. (*Id.* at 5.)

[6] Mark Twain therefore contends that "[t]o disregard the actual knowledge of $1,000,000.00 in coverage goes far beyond a syllogism or resolving a doubt." (*Id.* at 7.)

.    .    .

[T]he Proposed Agreed Order was not even submitted by the Defendants until after the Defendants removed the case to federal court. The existence of subject matter jurisdiction is determined at the time of removal. Consequently, the expiration of the Proposed Agreed Order should not have any bearing on the Court's analysis because not only was the expiration ineffective at the time of removal, but the Order had not even been submitted when the case was removed.

Mark Twain also contends (incorrectly) that, "Plaintiffs request that this Court set aside its common sense and disregard Plaintiffs' pre-suit knowledge of at least $1,000,000.00 in coverage." This could not be further from the truth. In fact, to the contrary, Plaintiffs strongly encourage this Court [to] rely on its common sense. More pointedly, Plaintiffs encourage this Court to rely on its wealth of experience in dealing not only with the body of law relative to removability, but also its wealth of experience in dealing with liability insurance carriers who deny coverage under myriad circumstances, including where employees are allegedly not engaged in the line and scope of their employment at the time of the underlying event, as Defendants emphasize here. Plaintiffs respectfully suggest that such a common sense reflection will underscore why a UM/UIM claim was pleaded so as to protect the Plaintiffs' interests and why such a pleading in no way unequivocally establishes the amount in controversy as required by *Lowery*.

.    .    .

Plaintiffs' property insurance carrier resolved all of Plaintiffs' property damages claims prior to Mr. and Mrs. Wilson's filing their action for personal injuries. Thus, no claims for property damage are being pursued. Certainly, Plaintiffs' Complaint makes no such claims. Standing alone, the fact that there are no property damage claims at issue reveals the inapplicability of Defendant's argument on this point. Also inapplicable is the Defendant's suggestion that the lack of property damage claims somehow weakens Plaintiffs' argument that pleading a UM/UIM claim was a reasonable measure to preserve Plaintiffs' claims. At the risk of stating the obvious: Since the Plaintiffs successfully resolved their property damages claims prior to this action being filed, there were and are no residual property damages claim or claims to now pursue.

.    .    .

In its Response, Chester Bross misstates or mischaracterizes medical charges related to Mrs. Wilson's medical care as "past medical

expenses." . . . This [defendant's] statement is inaccurate and amounts to a 282% inflation of what Mrs. Wilson's medical expenses actually are.

In fact, Mrs. Wilson was and remains insured by Blue Cross Blue Shield of Alabama. As part of this insurance relationship, Blue Cross Blue Shield has contractually negotiated the medical charges referenced by Chester Bross such that the medical expenses actually paid on Mrs. Wilson's behalf amount to only $17,096.55. Blue Cross Blue Shield has asserted a subrogation claim for this same amount . . . which is the <u>true</u> amount of past medical expenses incurred by Mrs. Wilson.

(Doc. 17, at 3, 4, 4-5, 5-6 & 6 (internal citations omitted.))

## CONCLUSIONS OF LAW

A.     **Jurisdiction in General.**

1.     There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]"  (internal citations omitted)). Moreover, the removing defendants must bear "the burden of demonstrating federal

jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

2.     Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at 9-10 ("The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the non-diverse defendant, Alfa Mutual Insurance Company, has opted out of this litigation and thus [has] become a nominal party whose citizenship may be disregarded for diversity analysis. There is complete diversity of citizenship between all other adverse parties. The Plaintiffs have affirmatively alleged that the amount in controversy is in excess of $2,000,000.00; therefore, the amount in controversy is far beyond the minimum amount required for diversity jurisdiction."),[7] the removing parties bear the burden of establishing complete diversity of citizenship, that is, that plaintiffs are diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state

---

[7]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

3.      As there is no question but that complete diversity in this matter exists (Doc. 8, Plaintiffs' Brief in Support of Motion to Remand, at 2), the undersigned focuses solely upon whether the removing defendants have established by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs. Prior to looking at this issue at some length, however, the undersigned briefly considers both paragraphs of § 1446(b) and how this case came to be removed under the second paragraph of that section.

**B.      The First and Second Paragraphs of 28 U.S.C.§ 1446(b).**

4.      The procedure for removal of a civil action is governed by § 1446(b) which generally provides, in its first paragraph, that the notice of removal must be filed within 30 days after service of the initial pleading "setting forth the claim for relief" but also provides, in its second paragraph, that "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]" 28 U.S.C. § 1446(b).[8] Therefore, "the statutory framework provides for a two-pronged analysis for removal,

---

[8]      There are three types of removal under § 1446(b): "In addition to first-paragraph cases like *Pretka*, § 1446(b) permits the removal of two other types of cases, both of which are governed by the statute's second paragraph. The first type of second-paragraph case (Type 1) is one that initially could have been removed had the parties possessed the relevant jurisdictional information, but, because the removability was not initially ascertainable, the defendant could not carry its jurisdictional burden until a later time. The second type of second-paragraph case (Type 2) is one that originally could *not* have been removed because it initially did not satisfy federal jurisdictional requirements, but that later *becomes* removable because the nature of the (Continued)

to-wit: '[I]f the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant. . . . [I]f the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of . . . other paper from which the defendant can ascertain that the case is removable.'" *Holloway v. Morrow*, 2008 WL 401305, *2 (S.D. Ala. Feb. 11, 2008), quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992). The time limit set forth in § 1446(b) "'is mandatory and must be strictly applied.'" *Id.*, quoting *Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003). In addition, it is clear that "the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to ascertain intelligently that the action is removable." *Id.* at *3 (citations omitted); *see also Clingan, supra*, 244 F.Supp.2d at 1302 ("[T]he 'plain purpose of [the] language [of 28 U.S.C. § 1446(b)] "is to permit the removal period to begin only after the defendant is able to ascertain intelligently that the requisites of removability are present."'"); *Moore v. Allstate Indemnity Co.*, 2006 WL 2730743, *4 (S.D. Ala. Sept. 22, 2006) ("The defendants were not required to remove based solely on the complaint unless they 'could have intelligently ascertained that the action was removable' before receiving the plaintiff's discovery response.").

5.    In *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (2010), a panel of the Eleventh Circuit reiterated the need for promptness in removal under both paragraphs of § 1446(b) and explained that the road offered for defendants in the second paragraph is not an easy

---

dispute changes. Thus, whereas Type 1 cases have always been removable but the removability was not initially ascertainable, Type 2 cases shift from nonremovable to removable in nature." *Roe v. Michelin North America, Inc.,* 613 F.3d 1058, 1061 n.4 (11th Cir. 2010) (emphasis in original).

one to travel particularly since the word "ascertained" in that paragraph is much different from the language contained in the first paragraph. *See id*. at 760.

> "Setting forth," the key language of the first paragraph, encompasses a broader range of information that can trigger a time limit based on notice than would "ascertained," the pivotal term in the second paragraph. To "set forth" means to "publish" or "to give an account or statement of." "Ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty." The latter, in contrast to the former, seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally.

*Id*., quoting *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). This language is important not only because it indicates a partial misuse of the word "ascertain" in *Holloway, Clingan, and Moore, supra*, but also because, as noted in *Pretka*, it is a reminder to district courts that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section. *See id*. This is, in turn, not only because the first paragraph of § 1446(b) does not "restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal[,]" *id*. at 771; *see also id*. at 759 (a removing defendant can offer its "own affidavits or other evidence to establish federal removal jurisdiction[,]"); *id*. at 755 & 756 ("The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation-provided of course that removal is procedurally proper. . . . The other circuit courts of appeal that have addressed the issue agree with our circuit law that defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal. . . . No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can."); *id*. at 761 ("Lowery's 'receipt from the plaintiff' rule has no application to cases, like this one, which are removed

under the first paragraph of § 1446(b).”), but, as well, because “the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible,” *id*. at 753; *see also id.* (“A different question is presented [] when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing.”); *id*. at 770 (“It is true that ‘[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.’ . . . And viewing facts through the lens of common sense is not star gazing.”), and “a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.” *Id*. at 754; *see also id.* (“The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions then we all do in everyday life.”).

6.      The notice of removal filed on January 11, 2011 clearly falls within the purview of the second paragraph of § 1446(b) because it was not filed within thirty days of service of the complaint, same having been accomplished on June 14, 2010 (Doc. 1, Exhibit A, Notices of Service). *See* 28 U.S.C. § 1446(b) (“If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable[.]”). This is a second-paragraph removal because ALFA, plaintiffs’ insurer and resident of Alabama, was a named defendant and the out-of-state defendants had to await a decision by ALFA regarding whether it would opt-out of the case before removal was possible. *See Toole v. Chupp*, 456 F.Supp.2d 1218,

1219, 1221 & 1222 (M.D. Ala. 2006) ("'[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.' Therefore, the critical question is whether ALFA is a real party to the controversy presented by this case or is simply a nominal one. . . . [T]he question for this court is whether any of the above three exceptions apply to the Tooles' case, and the answer is that none does. ALFA is not enforcing this action through subrogation; nor is it 'defend[ing] itself against a "direct action,"' that is, 'one in which "the liability sought to be imposed could be imposed against the insured,"' or one over 'its own acts and omissions.' Instead, it is apparent from the record in this case . . . that the Tooles named ALFA as a defendant for the sole purpose, as required by Alabama law, of putting its insurer on notice of the pendency [of] litigation and giving the insurer the opportunity to participate or opt out. Now that ALFA has opted out (and even has made explicit in its notice of opt out that it 'agrees to be bound by the verdict of the jury and agrees to pay any judgment in accordance with its policy of insurance'), the Tooles and ALFA simply have no dispute between them at this time. Also, ALFA is not assuming control of, or seeking to control, the litigation; indeed, the company has opted out of the litigation, agreeing to abide by the outcome of any jury trial. Thus . . . the liability of the insurance company is entirely 'contingent and indirect,' in the sense that Chupp and Bramlett will litigate entirely the issue of fault, upon which any issue concerning ALFA's policy is contingent. Moreover, Chupp and Bramlett have secured their own counsel and retain[] complete control over the action. Therefore, ALFA's involvement here is insufficient to take it outside the general rule that '[liability insurance companies] are usually not treated as parties to an action involving their insured.'"); *but cf. Hudson v. McGowan*, 2010 WL 1416510, *1 (M.D. Ala. April 8, 2010) (though ALFA was a named defendant the nonresident defendant removed the action within thirty(30) days of service of the complaint on the basis of

diversity jurisdiction and the court determined that ALFA was a nominal party whose citizenship did not destroy diversity).

### C.   <u>**Amount in Controversy**</u>.

7.      This decidedly second-paragraph case is still informed by the analysis set forth in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (11th Cir. 2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, 553 U.S. 1080, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008). *Compare Roe, supra*, 613 F.3d at 1061 n.4 ("This opinion considers removal only under the first paragraph of § 1446(b); it does not address the effect of *Lowery* . . . on second-paragraph cases.") and *Pretka, supra,* 608 F.3d at 747 ("*Lowery* was a case that involved the removal procedures in the second paragraph of 28 U.S.C. § 1446(b), and the decision must be read in that context. While some of the language of the opinion sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case, like this one, is concerned. While we may consider dicta for its persuasive value, we are not persuaded to follow *Lowery*'s dicta about the type of evidence a defendant that removes a case under the first paragraph of § 1446(b) may use in establishing the requisite amount in controversy.") *with Brown v. Tanner Medical Center*, 2010 WL 3328500, *3 (M.D. Ala. Aug. 23, 2010) ("As this is a second-paragraph Type 1 case, the case is still governed by the analysis outlined in *Lowery*[.]") and *Jackson v. Litton Loan Servicing, L.P.,* 2010 WL 3168117, *4 (M.D. Ala. Aug. 10, 2010) ("Until the Eleventh Circuit changes the rule set forth in *Lowery*, this Court will continue to apply it when considering a notice of removal under the second paragraph of § 1446(b)."). *Lowery* requires courts to "review the propriety of removal on the basis of the removing documents[]" and retain jurisdiction "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them," or remand if the opposite is true. 483 F.3d at 1211. In other words, the documents received from the

plaintiff by the defendant must "contain an ***unambiguous*[9]** statement that clearly establishes federal jurisdiction." *Id*. at 1213 n.63 (emphasis supplied; footnote added); *see also id*. at 1213-1214 ("[I]n assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction. This inquiry is at the heart of a case, such as the one before us, in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c). In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion is filed-i.e., the notice of removal and accompanying documents."). This Court may not "speculate in an attempt to make up for the notice's failings." *Id*. at 1215.

8.    With these principles in mind, the undersigned first considers the defendants' arguments in response to the plaintiffs' motion to remand which are different from the argument made in the removal petition (*see* Docs. 11 & 12) and then considers the argument contained in the notice of removal (Doc. 1). The undersigned appreciates the defendants to argue in their memoranda that because they have discovered from plaintiff Ramona Wilson that she has quantifiable medical expenses and past wages totaling $51,797.75 and she also seeks punitive damages and damages for future medical expenses, pain, suffering and mental anguish, it is clear

---

[9]    Although courts have been critical of *Lowery*, *see, e.g., SUA Ins. Co. v. Classic Home Builders, LLC,* 2010 WL 4664968, *4 (S.D. Ala. Nov. 17, 2010) ("*Lowery*'s 'unambiguously establish' standard necessarily is more exacting than a preponderance of the evidence standard, and both of them cannot simultaneously apply."), until the Eleventh Circuit wholly revamps *Lowery* this Court must continue to insert a square peg into a round hole, *see* 483 F.3d at 1211 ("Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate. Significantly, if a defendant can only carry the burden of establishing jurisdiction under these circumstances, then the defendant could have satisfied a far higher burden than preponderance of the evidence. Regardless, our precedent compels us to continue forcing this square peg into a round hole.").

that the amount in controversy exceeds $75,000, exclusive of interest and costs.[10]  While it is true that punitive damages are to be considered when determining the amount in controversy, *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered."), and the undersigned would be somewhat pressed to find against the removing defendants upon a showing that Ramona Wilson's quantifiable damages to date total some $51,797.75, *cf. Henderson v. Dollar General Corp.,* 2009 WL 959560, *1 & 4 (S.D. Ala. 2009) ("Although the plaintiffs pleaded $57,328 in medical expense damages and $9,000 in lost earnings damages, for a total of $66,328, they did not specify any amount of damages they claim they are due for future lost earnings, pain and suffering, emotional distress, loss of companionship, or punitive damages. . . . As the court explained in *Lowery*, in order to satisfy the preponderance of the evidence standard, 'the removing defendant must establish the amount in controversy by "[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is sufficient to incline a fair and impartial mind to one side of the issue rather than the other."' That standard, especially in light of the *Allen* decision, militates against remanding this case. The defendant need only make up a difference of less than $10,000 in controversy to keep this case in federal court. Although the evidence before the court is not impregnable, 'a fair and impartial mind' would clearly find that years of pain in addition to the other elements of damage that the plaintiffs claim add up to a dispute of at least that amount.

---

[10]     Mark Twain's argument regarding plaintiffs' failure to properly assert a property damage claim and offer of evidence regarding the alleged retail value of plaintiffs' vehicles involved in the accident (*see* Doc. 12, at 7-8 & Exhibits D & E) is simply rank speculation and offers this Court no help in determining the amount in controversy in this action.

The court finds that there is a sufficient amount in controversy and, consequently, that it has original subject matter jurisdiction over this diversity case." (internal citations omitted)), the stumbling block for the removing defendants is that plaintiffs are entirely correct that Ramona Wilson's quantifiable medical expenses are only $17,480.30 (Doc. 11, Exhibit J, Certification of Custodian of Subrogation Records), not over $48,000 (*see* Doc. 11, at 4). This is because defendants have offered no evidence that the Wilsons have become liable for any expenses billed by Mrs. Wilson's medical providers in excess of the $17,480.30 paid by Blue Cross and Blue Shield of Alabama and, therefore, plaintiffs will be limited to recovering only that amount to which they will become liable to pay, that is, the insurance company's subrogation total (now $17,480.30). *See Portis v. Wal-Mart Stores East, L.P.,* 2008 WL 2959879, *8 (S.D. Ala. July 30, 2008) ("It is black-letter law that 'damages for medical expenses are to be allowed only for doctor's and medical bills which the plaintiff has paid or has become obligated to pay. The general rule is that damages are unrecoverable where the plaintiff has not paid or is not liable for such items.'" (internal citations omitted)). Therefore, when plaintiffs' quantifiable medical expenses ($17,480.30) are added to quantifiable lost wages ($3,254.83), just a little over $20,000 in quantifiable expenses is rendered. It would be pure speculation and unabashed guesswork on a scale prohibited by *Lowery* for this Court to find that plaintiffs' claims for punitive damages and damages for future medical expenses, pain, suffering and mental anguish takes the quantifiable expenses over the $75,000 threshold. *See Rae v. Perry,* 392 Fed.Appx. 753, 756 (11th Cir. Aug. 16, 2010) ("Viewed objectively, the complaint and supporting documentation filed with the notice of removal indicate that Rae sought $20,000 in compensatory damages on all counts together. Perry failed to present evidence that showed by a preponderance of the evidence that the compensatory and unspecified damages in the complaint, including punitive damages and

attorneys' fees, alone or combined, met the jurisdictional amount."); *Mapp v. American General Assurance Co.,* 589 F.Supp.2d 1257, 1265 (M.D. Ala. 2008) ("Mapp's complaint does not specify the total amount of damages sought; the only specific numerical amount he seeks is $20,000 in compensatory damages. American General appears to argue that, because Mapp also seeks punitive damages, the $75,000 jurisdictional requirement is satisfied. The only evidence that American General offers in support is allegedly 'similar' cases where Alabama courts have authorized damage awards greater than the jurisdictional amount. It is questionable 'whether such general evidence is ever of much use in establishing the value of claims in any one particular case,' because 'the facts regarding other cases tell us nothing about the value of the claims' in the instant case. Such a concern is particularly valid here, where the complaint and removal documents are not specific enough as to the duration, extent, severity, or kinds of harms alleged to allow meaningful comparison between this case and the cases that American General offers. To the extent possible, however, the court has reviewed the cases cited by American General and concludes that they are not sufficiently factually and legally similar to this case such that this court can draw any reasonable conclusions from them. Thus, the court finds that American General has failed to carry its burden of proving that the amount-in-controversy exceeds $75,000, and thus diversity jurisdiction is wanting." (internal citations omitted)). The calculations suggested by the removing defendants are based on their own speculation and, therefore, with respect to the arguments made by Chester Bross and Mark Twain in their memoranda in opposition to plaintiffs' motion to remand, the undersigned concludes that the removing parties have not unambiguously established federal jurisdiction.[11]

_____

[11] Even if Mark Twain is correct that the plaintiffs' post-removal refusal to stipulate that they do not seek more than $75,000 provides "some evidence of the value of the case[,]" (Continued)

9.      The undersigned now turns to the primary removal argument in this case, set forth in the removal petition filed by Chester Bross and joined by Mark Twain, which is that plaintiffs' claim against ALFA for under-insured or uninsured motorist benefits asserted in the complaint--founded on the allegation that Chester Bross and Mark Twain were/are uninsured or under-insured motorists--combined with plaintiffs' failure to dismiss that claim despite knowledge that Chester Bross and Mark Twain each have $1,000,000 in liability coverage unambiguously establishes that the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. (*See* Doc. 1, at 7-9 & 10) Based upon the case law unearthed, the undersigned is persuaded to recommend that the Court agree with the defendants and find that the complaint and notice of removal unambiguously establish federal jurisdiction.

10.     The issue would have been much closer and one on which the undersigned might have disagreed with the defendants had the only relevant cases been the pre-*Lowery* decision of *Toole v. Chupp, supra*, 456 F.Supp.2d at 1222 ("Although ALFA submits no depositions, the Tooles' complaint alleges that Chupp and Bramlett are underinsured, although they are insured for $100,000; Marie Toole alleges substantial bodily harm, including harm that required surgery, and will cause lifelong pain and suffering; and, perhaps most importantly, counsel for the Tooles acknowledged . . . that he could see a jury 'bringing back more than seventy-five thousand.' It thus appears 'more likely than not,' that the amount in controversy is met."), cited prominently in

---

*Alexander v. Captain D's, LLC,* 437 F.Supp.2d 1320, 1323 (M.D. Ala. 2006), "standing alone" it certainly does not satisfy the removing defendants' "burden of proof on the jurisdictional issue[,]" *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1320 (11th Cir. 2001), nor would it satisfy that burden when combined with the approximately $20,000 in quantifiable damages, *cf. Jackson, supra,* 2010 WL 3168117, at *5 ("[T]he Plaintiffs' failure to stipulate to an amount has little if any probative value for determining the amount in controversy. As this Court has previously held, a refusal to stipulate to an amount in controversy in response to an interrogatory does not result in an admission regarding the amount in controversy.").

the notice of removal, and the post-*Lowery* decision in *Oliver v. Rodriguez,* 2008 WL 928328, *4 (M.D. Ala. April 4, 2008) ("At the evidentiary hearing, Plaintiff's counsel conceded that the Armijo Defendants' primary insurance policy contained a $750,000.00 limit. He further stated that, although he doubted that a verdict in excess of $750,000 was likely, he was unwilling, at that time, to stipulate to the dismissal of ALFA, the uninsured motorist policy carrier. Although discovery into the Plaintiff's injuries is still ongoing, Plaintiff's counsel estimated the actual damages at about $15,000-$20,000, which does not include pain and suffering or punitive damages. Specifically, Plaintiff's counsel mentioned injury to the back & neck vertebrae, lost wages, and expensive medical bills, in addition to pain and suffering and mental anguish. Based on the Plaintiff's naming of UIM carrier ALFA, his failure to dismiss ALFA after learning of the primary insurer's policy limits, his refusal to stipulate to less than $75,000, and his estimation of actual damages, the court finds that the Defendants have proven by a preponderance of the evidence that the amount-in-controversy requirements have been met."), which made no mention of *Lowery*. While the undersigned perhaps could have distinguished *Toole* because it was decided before *Lowery* and *Oliver* because of its failure to discuss *Lowery*, *cf. Smith v. Parker*, 2008 WL 5622711, *3-4 (N.D. Ala. July 11, 2008) ("The court notes that entirely absent from [] *Oliver* . . . is *any* mention, much less a discussion, of *Lowery*. Further, in *Oliver*, the court conducted a post-removal evidentiary hearing in which 'Plaintiff's counsel conceded that the Armijo Defendants' primary insurance policy contained a $750,000.00 limit' and 'stated that, although he doubted that a verdict in excess of $750,000.00 was likely, he was unwilling, at that time, to stipulate to the dismissal of ALFA, the uninsured motorist policy carrier.' Unlike *Oliver*, in this case no evidence of any policy coverage in excess of the jurisdictional minimum exists. Also, no record of a plaintiff's refusal to dismiss an uninsured motorist policy carrier exists."

(emphasis in original)), this Court cannot ignore *Harrison v. Ace American Ins. Co.,* 2009 WL

1664372 (M.D. Ala. June 15, 2009) and *Hudson v. McGowan*, 2010 WL 1416510 (M.D. Ala.

April 8, 2010). In the earlier case, the court discussed *Lowery* at some length yet concluded that

plaintiff's motion to remand need be denied. 2009 WL 1664372, at *2.

> Although the complaint never explicitly alleges damages in excess of $75,000, it does allege that in late 2007, Harrison "made a claim with [ABC Transportation] for uninsured and underinsured motorist coverage policy limits" on policies described earlier in the complaint, and that the claim was denied[.] The only policy alleged earlier in the complaint, which is described with a specific reference to company name and policy number, is the one Ace issued to ABC Transportation for commercial automobile insurance. The complaint acknowledges that the limit for that policy is $2,000,000.

> Harrison argues that because her claim for the policy limits was directed to ABC Transportation, however, and not to Ace, it cannot serve as a proxy for the damages at issue in her breach of contract claim against Ace. This argument fails. *Lowery* does not impose hyper-technical rules on litigants seeking to remove cases that clearly belong in federal court. The removal rules as interpreted by *Lowery* protect against "speculation" as to whether jurisdiction exists. It is the "absence of *factual allegations*" that should prevent courts from determining the existence of jurisdiction "by looking to the stars."

> No divination is necessary here. It is common practice in Alabama to make demands on an insured for the benefits due under an insurance policy. The facts as alleged in the complaint establish that Harrison made a claim to ABC Transportation for the policy limits of $2,000,000 on a policy issued to ABC Transportation by Ace. That much money, therefore, to a legal certainty, is in controversy with respect to the breach-of-contract claim against Ace. Jurisdiction is unambiguously established by the face of the complaint because it alleges that Harrison made a demand for policy limits, which exceed $75,000, and on a policy issued by the defendant.

*Id*. (internal citations omitted; emphasis in original) In *Hudson*, the Middle District of Alabama

denied plaintiff's motion to remand in a case similar to this one in which plaintiffs sued their

underinsured motorist carrier, ALFA, and an individual defendant who attached to the notice of

removal her automobile insurance policy limits of $100,000. *Id*. at *2. "The evidence of the

letter, evidence that McGowan's policy limits exceed $75,000, and the fact that the underinsured

motorist carrier was also sued, all of which were present at the time of removal, establish that the jurisdictional amount existed at the time of removal." *Id.* (citation omitted).

11.     In this case, plaintiffs sued their underinsured/uninsured motorist carrier, ALFA, specifically averring that "as of June 2009 they [] made demand upon and/or provided notice to [] ALFA MUTUAL INSURANCE COMPANY to pay the uninsured and/or under-insured motorist benefits to which they are entitled under the terms and provisions of said policy and/or policies of insurance." (Doc. 1, Exhibit A, COMPLAINT, at ¶ 33) Plaintiffs maintain this claim on removal-and have declined to dismiss ALFA (*see, e.g.,* Doc. 8, at 7 ("Plaintiffs' Complaint includes the UM/UIM claim against ALFA out of an abundance of caution. By including the separate UM/UIM claim, the Plaintiffs preserved any claims they might have against their UM/UIM carrier and, more importantly, ensured compliance with the notice provisions of their UM/UIM policy."))-even though Chester Bross and Mark Twain have provided evidence that the limits of their liability policies exceed the jurisdictional minimum of $75,000.00 by a wide margin. Based upon the foregoing and the pertinent case law cited herein, the undersigned is persuaded to find that jurisdiction is unambiguously established by the complaint and removal documents. *Compare Hudson, supra with Harrison, supra.*[12]

---

[12]     In reaching this conclusion, the undersigned is not at all unsympathetic to plaintiffs' need to heed caution and preserve all their claims in order to guard against a situation where liability insurance carriers (like those of the defendants) might deny coverage based upon any number of circumstances, "including where employees are allegedly not engaged in the line and scope of their employment at the time of the underlying event, as Defendants emphasize here." (Doc. 17, at 5) However, it is not appropriate on removal for this Court to consider the impact of jury issues on strategic filing decisions, *compare Hanes v. Greyhound Lines, Inc.,* 2005 WL 1971118, *2 (S.D. Ala. Aug. 16, 2005) ("In Alabama, the question of whether an employee was acting in the line and scope of his employment is usually a question of fact reserved to the province of the jury.") *with Pryor v. Brown & Root USA, Inc.,* 674 So.2d 45, 51 (Ala. 1995) ("Given the question whether Brown & Root condoned Dealy's personal use of the vehicle and the question whether it ratified his acts, we conclude that the evidence presents a (Continued)

## <u>CONCLUSION</u>

In light of the foregoing, it is **RECOMMENDED** that the plaintiffs' motion to remand (Doc. 8) be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 22nd day of March, 2011.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

genuine issue of material fact as to whether Brown & Root is liable under the doctrine of respondeat superior. Thus, as to the claim asserting liability under the doctrine of respondeat superior, the summary judgment is due to be reversed and this case is remanded for trial on that claim."); instead, the sole issue before the Court is whether the removal documents establish the jurisdictional amount in controversy and, as aforesaid, the undersigned finds that the allegations of plaintiffs' complaint, when combined with the contents of the removal petition, the documents attached to the removal petition (i.e, the liability policies of Chester Bross and Mark Twain), and plaintiffs' decision to not dismiss ALFA from this action, unambiguously establish that the amount in controversy in this case exceeds the jurisdictional minimum of $75,000.00.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[13] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[13]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).